for the week. It looks to me as if we have some younger attorneys out there in the audience. If I understand correctly, those are students from the Melville Christian Academy, is that right? And is a Miss Duvall out there somewhere? Well, welcome. I don't know what you will find from today's arguments, but we are glad you are the very well-spoken and kind Judge Willett. We will be glad to talk to you and maybe the other two of us as well, but only when the arguments are over both cases today. And we will try to link up with you to make sure you know where and when that will happen. Well, with that important aside, I will call the first case of the day, which is R.J. Reynolds Tobacco Company et al. v. The Food and Drug Administration. Looks like Mr. Tenney of the Justice Department gets to go first. Thank you, Your Honor. May it please the Court, Daniel Tenney for the United States. FDA in this case exercised its express delegated authority to adjust the text of the cigarette warnings from the Tobacco Control Act if the Secretary found that such a change would promote greater public understanding of the risks associated with the use of tobacco products. This Court has already rejected plaintiff's primary objection to the warnings, both in the District Court, which was premised on the First Amendment. So what remains before this Court is an APA challenge. The fundamental flaw that overrides all of plaintiff's APA challenges is a failure to recognize the deference that Congress in numerous places in the statute conferred on FDA to make changes that it deemed appropriate to enhance public understanding. Starting with the legislative finding that FDA was an agency with the scientific expertise to make judgments in this area, moving to the provision on which FDA relied, which discusses both the need to enhance public understanding and talks about if the Secretary finds, in other words, this is contemplating that FDA would be making this determination rather than a need to prove something to the satisfaction of plaintiffs or a reviewing court. And the end of that provision also discusses the risks associated with the use of tobacco products. It's not limited to the risks articulated in the default set of warning labels that Congress had devised in 2009, but allowed the FDA, as it did here, to make judgments based on developments in science, based on its own research. But isn't it odd, though, that here Congress specifies nine specific warning labels enumerating the precise text and says that it's unlawful if you don't use these. Isn't that a weird situation in which you would find delegation when Congress has specified the precise warnings by text? If that were all Congress had said, then of course there wouldn't be delegation. But there's an express provision that says that FDA can adjust the text if the Secretary finds that such a change would promote greater public understanding of the risks associated with the use of tobacco products. Right. So it's about what the meaning of the word adjust means. I mean, it's about what the meaning of the whole provision means. But the word adjust in context, I mean, adjust just means a change. And, and we know from cases like MCI versus AT&T, or FCC, I guess, that words like modify, we don't mean that, we don't construe the word modify to mean do whatever you want. It's a very limited power. Why would we read adjust differently from how the Supreme Court has read the word modify? I mean, a few reasons. One is that, you know, it's described, you know, adjust can mean change. So, and it draws its meaning from I think that should be clear. And, you know, it's referred to as a change at several points, both in the title and in the text of the very provision. And then the crucial part of the, of the statute is the standard that FDA is supposed to satisfy. FDA is supposed to make a finding that such a change, Congress used the word change, will promote greater public understanding of the risks associated with the use of tobacco products. Now, if it were just anything that satisfies the greater understanding language, let me give you a hypothetical, because I assume this can go in either direction. It could be a more restrictive warning or it could be a less restrictive warning, so long as it's to promote greater understanding. So what if the FDA in a future administration says, you know what? Smoking is risky, just like all adult activities. I take it your position would be that that too would be allowed? You see what I'm saying? I mean, this power, if you're correct, it can be used to dial up or down, I would think. So let me give you my hypothetical. Smoking, like skiing, like drinking, like all sorts of things that adults do that are lawful is risky, sure. So proceed responsibly. Would that be okay? That wouldn't exceed FDA's authority to adjust the text. It might be arbitrary. That would be allowed. I'm sorry? That would be allowed. Is that what you're saying, right? I'm saying it might be arbitrary, capricious, or there might be other... That's a separate challenge. That would be consistent with the statute is what you're saying. I mean, if FDA could make a finding that that would promote greater public understanding, I have a hard time believing that that would be true for that example. But why not? We're just trying to make sure that the public, we meaning the FDA, which was trying to make sure the public doesn't over assess the risk or under assess the risk. Smoking is risky, so there's lots of stuff. Proceed responsibly. I think FDA would have a lot of difficulty defending that on the merits, on the substance of it. But the point is, you don't have to read the word adjust to mean you can't change the substance to say that some substantive changes would be inappropriate. Now, noteworthy here is that there is no challenge to the substance of these warnings. There's no argument that they are inaccurate. There's no argument that they misrepresent the risks, the district court did not conclude that FDA's finding was erroneous, that this would promote greater public understanding. FDA adopted factual statements and photorealistic images to convey the text of those more accurately to the public. And FDA has broad authority. Where else has Congress used adjust? Across the federal statutory landscape, where else has Congress used the word adjust to mean expand? Are you aware of any? I guess I would have two answers to that. First, directly answering your question, I haven't canvassed the U.S. code for the word adjust. I guess I would resist what I take to be the premise of the question, that this is an expansion. I mean, FDA is changing the text of the warnings. It's switching the words of the warnings. That's adjusting the text. It's not, I don't understand a warning. I mean, this is a warning in the sense that it provides information to potential consumers of tobacco products. It's not a regulation that FDA is regulating more or less tightly or expanding or restricting or placing more. I think only two of the nine statutory warnings remain completely unchanged. Is that right? That's correct. Yes. So at what point does adjusting the text become substituting Congress's judgment with the agency's judgment? Is there any real limit to the authority that you're claiming? The limit is what appears in the text, which is that the secretary has to make the finding that Congress specified. But Congress contemplated, I mean, what Congress did was it said, we're sitting here in 2009, and here's what we think the warning should be. And FDA, shortly thereafter, promulgated warnings using that text and adding graphic images. Then after that, there was a Surgeon General's report in 2014 that provided more scientific information about the risks of tobacco use, some of which FDA concluded were lesser known risks, things that the public would have a reason to not understand as well, and that it could really be conveyed usefully through additional warnings. That's exactly what Congress contemplated. FDA wasn't rejecting what Congress did. FDA was saying Congress had decided in 2009 the warnings that it thought were appropriate, but it also expressly delegated to FDA the authority to make changes. There are these repeated references. Congress has these repeated references to warnings specified in subsection A1. That's the language, specified in subsection A1. So I wonder how your reading doesn't render all those cross references kind of meaningless. I mean, what they're talking about is the, you know, A1 is the section that says you have to have the warnings on this, on cigarette packages. And so all those cross references refer to that. If there's text that's being rendered meaningless by one of the parties in this case, it's the plaintiff's reading, which renders, adjusts the text if the Secretary finds that such a change would promote greater public understanding of the risks associated with the use of tobacco products. I have no idea what the plaintiffs think that means. I mean, they think, seem to think it involves sort of the graphic design elements, which are expressly addressed in 1333 D1. But it would be weird to have the FDA do a rulemaking and make a finding of that kind about the public understanding of the risks associated with the use of tobacco products, if you were then going to turn around and say, but of course, you can't actually change what the warnings say. I mean, that's the provision that makes no sense. And, you know, all these cross references are just telling you, okay, which requirements are we talking about? We're talking about the requirement to put warning labels on cigarette packages. That, I mean, the statute is perfectly coherent as the government understands it. And if FDA concludes that one of the warnings doesn't work, either is no longer scientifically accurate, if they concluded, as the district court posited could happen, that one of the warnings was inconsistent with the First Amendment because it was trying to send an anti-smoking message instead of convey information, FDA can get rid of that warning. If some new science has happened in 2014, new science suggests that there are additional warnings that would enhance public understanding, FDA can do that. This is a broad delegation and deliberately so. There are numerous indications throughout the statutory text of that and plaintiffs don't have any reason that Congress would have, despite saying all of that, constrained FDA. Let me ask you, Mr. Tinney, about something in the opposing counsel's brief. And that's the standard that we should be applying. They are citing campaign for civil inequality. And rather than the standard factors for a stay, for an injunction, they say that this case falls into that category, that it's only necessary that they present a substantial case on the merits when a serious legal question is involved and shows the balance of equities. I didn't see in your reply brief that you responded to that. Is that the right standard for us to be applying? I mean, I think ordinarily this Court would require a likelihood of success on the merits. That actually doesn't require a likelihood of success on the merits. It says it's close enough for injunctive work. Yeah, I mean, I think that, I mean, we did respond, obviously, to their equitable arguments. If you've just heard— Should we use that standard is all I'm asking. I'm not trying to put you on the spot. But is that the right standard for us to be applying to determine whether the district court properly stayed under 705, the date of this regulation? I mean, among other things, that's not the standard the district court applied. So, you know, the district court said that there was a likelihood of success on the merits, and its conclusions on the other factors were premised on that. So it would be appropriate. If this Court thinks the district court was wrong and there isn't a likelihood of success on the merits, it would be appropriate to vacate the injunction, not to affirm it. And just taking a step back, I mean, the one thing Congress has made clear throughout the Act is the need to update the warnings from the Surgeon General warnings that have been on cigarette packages for 40 years, and that Congress deemed ineffective. And the idea, and plaintiffs now having lost their First Amendment challenge, you know, it's not like they're here saying, oh, we really love the Tobacco Control Act warnings, and we'd love to put those on our cigarette packages. And, you know, FDA's, you know, arbitrary and capricious behavior has deprived us of the ability to educate the public about, you know, in the way that Congress mandated. So, I mean, this is a question of whether Congress's judgment, which is throughout all of the provisions that I've cited, in the severability clause, where Congress said it wanted to the fullest extent possible to have the warnings that Congress selected, you know, implemented. In the face of all that, it would be extraordinary if you thought, well, plaintiffs haven't even proved that FDA made an error here, but nonetheless, we're going to issue an injunction, prevent, you know, leave the Surgeon General warnings in place, prevent FDA from implementing this regulation, which this Court has held is consistent with the requirements, and which FDA found in a finding that, although they nibble at the edges of it, plaintiffs haven't seriously shown that FDA made any errors in demonstrating that this would, in fact, enhance public understanding, which is what Congress wanted to do. I'm happy to take further questions. Otherwise, I'll reserve the balance of my time. I guess we have your argument. Thank you, sir. Thank you. May it please the Court, Ryan Watson for Appelese. The rule is unlawful for a host of reasons, including that Congress gave the agency the authority to adjust the text of the warnings, but not to declare Congress's warnings faulty, and then to substantively rewrite those warnings. Mr. Watson, let me ask you, though, about the two different ways that was expressed in D-1 and D-2. My understanding, D-2, the failure to properly identify the new provision was added in 2009. Does that seem correct? Yes. What we now call D-2. It provides for rulemaking. The other provisions we're talking about do not require rulemaking. It does seem to me Congress was saying this is an exceptional provision. It's just not changing the color of the graphics or something else. If we're going to go through the pain and suffering of rulemaking, then it does seem to me something substantial is being covered by that. What's your response? So a few points in response, Judge Southwick. I would begin by noting that both D-1 and D-2 involve rulemaking. D-1 talks about the secretary shall issue regulations. And so we think these are both rulemaking issues. But to get to what I think is... Let me ask you about that, because it really isn't phrased the same way, though D-1 is older language, I take it, predating 2009 amendments, perhaps? Both D-1 and D-2, the relevant language we're talking about here, were enacted as part of the Tobacco Control Act in 2009. Okay. Judge Southwick, I took the crux of your first question to be asking about the same thing that you were discussing with my friend on the other side, which is how do we reconcile the fact that D-2 has a greater public understanding finding with the fact that our position is that D-2 doesn't allow for these big substantive adjustments? And I'd love to address that directly if that's okay. I'd like to get to the meaning of adjust in just a moment, but in terms of the greater public understanding finding, FDA itself took the position in this rulemaking that things like color, things like size, these can affect public understanding, and I'm happy to provide citations in the rule and in the proposed... Actually, could you? Because I thought this was among the FDA's stronger arguments that I wanted to get your thoughts on. Yes, I'd be happy to do that. So in the rule itself at 85 Federal Register 15-647, FDA talked about size being important to understanding. In the proposed rule at 84 Federal Register 42-762, they talked about color being important to understanding. So I'm giving those as illustrations of the fact that something other than changing the words of the warning can affect public understanding, and everyone seems to agree on that. As to the meaning of adjust, Judge Ho, I noted your question about that. I would like to flesh that out a bit. In our view, adjust is a modest authorization referring to slight changes, and that really flows from the dictionary definition of adjust, from ordinary meaning of that term, and from the language of D2 itself here. So if you look at the language of D2 itself, it's quite instructive in this very same... Well, the caption uses the word change, though. It does, Judge Southwick, and we think that the word change there is referring to the types of authorized changes that appear in D2. So that's the adjustments that are at issue here, as well as later in D2 with respect to disclosures that are not at issue in this case. FDA has authority to establish. So in the title, change is referring to the types of changes discussed in D2, both the adjustments... Seems like the word adjust would be just as good a one in the caption if that's all Congress meant. Well, respectfully, I think adjust and establish, and this ties in with what I was just about to say. There are two different verbs going on in this sentence. Only one of them is at issue here, which is adjust. We think change is being used in the title to refer to both adjust and establish. And the fact that Congress chose two different verbs in this sentence in close proximity means that courts presume Congress meant something different when it used adjust and when it used establish. And here, it's obvious that adjust is a more modest authorization. The MCI versus AT&T case, which Judge Ho mentioned, is a great example. Also, if we just step back and think about ordinary usage of the word adjust, imagine that a judge authorized a law clerk to adjust the text and format and type size of a draft order. No one would understand that authorization to encompass changing the disposition of that order or adding a legal rationale that hadn't been discussed. It would be a... What if a judge told a law clerk, you can amend? In other words, same instruction, but it's the word amend rather than adjust. Same answer? I think same answer. That might be a bit of a closer case, but I do think same answer. If you said... So when the Constitution, Article 5, says you can amend the Constitution, those are only modest amendments. Well, fair point, Judge Ho. Maybe amend is indeed a different situation, as I was attempting to suggest it's at least closer. Maybe it indeed is on the other side of the line. But adjust here... But isn't that a problem for you? I mean, you've acknowledged that the word, that the difference, if there's a difference between amend and adjust, it's very hard to see. You have to squint to see a difference. And yet, we understand the word amendment in Article 5 to allow all kinds of things other than the... I don't remember off the top of my head. I think one's about the Senate. But, you know, you can amend anything under Article 5, and that's not a weird understanding of the word amendment. Fair enough about the word amendment. But with the word adjust here, again, we have three dictionary definitions that talk about slight alterations. We think the distinction in Q2 itself in context here where establish is used later in the provision. Establish can refer to creating or substantively changing, whereas adjust is a more modest authorization. And here, it's just notable what FDA has done. At pages 29 to 31 of our brief, we reproduced the chart that the district court created, which contrasts the TCA warnings with the warnings that FDA is requiring. And if you take a look at that, it's evident what FDA did is they began by deleting three of Congress's warnings entirely. Those are gone. Then they created four warnings from scratch that have no analog in the TCA. And again, that's undisputed. Then with respect to most of the other warnings, except for two of them, with respect to most of the other warnings, they materially rewrote those warnings in a way that goes beyond the meaning of adjust and certainly goes beyond the meaning of adjust the text. We think text read in context here is referring to typography. But even if you're not with me on that, it goes beyond the meaning of adjust to make these material changes to the warnings. Question. As science evolves, is it your view that the FDA can never update the substance of warnings? Or is it your position that Congress has frozen that text permanently? My position is that Congress expressed in D2 the degree of discretion that it expected FDA to have and that that is a Congress took the time to write nine specific textual warnings and gave an only modest authorization to make non-substantive changes to them. If science changes such that the warnings need to be substantively overhauled. So you say non-substantive changes. So just help me in a practical nuts and bolts way, as we're trying to craft an opinion here, what is the principled line between permissible adjustment of text and impermissible substantive rewriting of text? Yes. I'd be happy to give a few examples on either side of the line. Just for purpose of answering that question, I'm just going to answer based on the word adjust. In other words, even if you're not with me on the fact that text means typography, just talking about if you're with me on adjust being something modest. So here are some things that I think FDA could do. Imagine that they wanted to change a term in the warnings to render it more modern or to clarify it slightly. So for example, some of the warnings refer to smoking. Well, now we're in a world where smoking cannabis and smoking various products is more prevalent. They wanted to switch smoking to smoking cigarettes. That wouldn't be changing the substance. It would just be a minor clarification. Or imagine that they wanted to change the word baby to the word fetus when discussing in utero harm or perhaps slight changes to make the warning a bit more concise. So for example, when it refers to smoking can harm your children, perhaps FDA says brevity is important, so we're just going to make it smoking can harm children and cut out the word your. Those would all be fine in our view. But what FDA did here with respect to all but two of the warnings is definitely on the other side of the line. Well, counsel, rather than adding to what they have here are specific things in the statute, nine specific effects of smoking. More recent science has identified four more dreadful things that tobacco smoke causes. Would it be permissible for those four just to be added after a semicolon the other warnings? Or is the FDA completely prohibited from having the public warn about these four new dreadful diseases that people would perhaps decide not to smoke because of? It's our position that the adjust authority doesn't allow them to increase the number of warnings and doesn't allow them to substantively revise the text of those warnings. So they have to go back to Congress and say give us another statute? If they think that more warnings or that substantively different warnings are necessitated by the scientific changes, then yes. And that's not surprising at all. Again, Congress here, it's notable in this statute, when they wanted FDA to create graphic warnings, they told the agency, please create graphic warnings that discuss the consequences of tobacco products. It didn't specify the content of the warnings beyond that. And elsewhere in the TCA, in provisions that we cite at pages 24 through 26 of our brief, Congress gave FDA authority to require a variety of different types of disclosures and statements if it decides to do so. And in all of those cases, Congress did not specify the text of the disclosures or the warnings. But in this context, Congress took the time to write nine specific warnings and it gave FDA a cabined authority to adjust them under certain circumstances. FDA here, however, is not being shy. It's saying, well, those warnings are faulty. So we're going to delete three of them. We're going to add four from scratch. We're going to materially change most of the others. We're going to increase the number of warnings. And frankly, we're going to do all of that on a record that is problematic. And that gets to our arbitrary and capricious arguments as well. But I'm still not sure I have an answer to Judge Southwick's, I think, very interesting question about this, what I'll call the semicolon idea. So one of the nine enumerated by Congress is smoking can kill you. Yes. You could argue that all the, whether it's a new or amended act by the FDA, they're all lesser included. Smoking can kill you, semicolon or em dash or whatever, including diabetes, including reduced blood flow to the limbs. Why isn't this all lesser included, given that Congress has said smoking can kill you? So I think changing the level of generality, so either going from Congress wrote a general one and fleshing out more specific... It's sort of like your baby in utero thing. It's really just modifying the words that are already there. I think the baby in utero thing was just changing one term in a way that doesn't affect the meaning. It's just a more modern or... Kill you, but kill you through specific issues. There's specific types of harms. Well, I think changing the level of generality is a very different situation. So just focusing on the baby example for a moment, the changing from smoking during pregnancy can harm your baby to smoking can stunt fetal growth. At first blush, that might seem like that's not that big of a change. It's kind of saying the same thing. But if you think about it, that's not the case. The Surgeon General has found that smoking during pregnancy can stunt fetal growth, reduce infant lung function, increase SIDS risk and cause cleft palates. That's at 8374 and 8377 of the record. So FDA's decision to go from the general to only one of those specific risks, we could debate which one's better as a policy matter, but it is a substantive judgment call and it's omitting by going to the specific risk, it's omitting the other types of specific risks that are subsumed within the more general language that Congress... But what if the statute was written the opposite way with the specific risk is in the statute? And FDA decides there are a lot of other ways that babies can be hurt and so they make it more general. Would that be prohibited? Is that more than an adjustment? Yes, that is more than an adjustment. And again, we think the fact that text, adjust the text, is the relevant phrase here also helps us because text read in context here is referring only to typographical sorts of changes. And I'm happy to explain why we think that's the case, but one of the reasons is the Nocitor Associus Canon, which counsels that a term is construed according to the accompanying words. And here text is surrounded by format and type size and those counsel a narrow reading. Also in A2 and B2, the word text is used seven times when discussing typography. So it's not at all strange to think that it was used here to refer to typography as well. If I could just perhaps move... Before you move on, I'm just struggling to understand because I think you have developed a principle. I'm just not sure I understand it. I want to make sure I have a full opportunity. You've said that changing, clarifying... I forget the specific examples, but one was the other hypotheticals are levels of generality. That's what... So I think maybe just to clarify the first of those, I was saying that changing the term baby to the word fetus would be permissible, just changing that one term itself, because fetus is more commonly used in the scientific literature now as compared to, say... Why isn't that the same greater includes the lesser concept that I was presuming in my questions? Well, I was giving... You see my concern? I was giving it as an example of what to me was an attempt to mean the same thing, but just in more modern terminology. So perhaps not the best example in that regard, but that was the legal principle that I was trying to get across. Just to make sure we're on the same... According to Congress, you can say smoke, or you must say, smoking during pregnancy can harm your baby. Under your view, you can replace baby with fetus, but you can't replace harm with specific types of harm. Why? I'm not understanding that dichotomy. Because the latter is getting into... Again, as I said, we could have a policy debate about whether it makes sense to do so. The latter is making a substantive judgment that it's better to communicate one of the specific risks than to use a general term that subsumes multiple types of risks. Baby fetus is... We can get into lots of debates that people would have. I'm sure you're all familiar with. Again, maybe that was the best example, but as I said, the point I was trying to get across with that particular example is if we could change one term just to make it more modern. Maybe my smoking goes to smoking cigarettes example was a better one there, where we're not changing the meaning at all. We're just clarifying it slightly by saying smoking cigarettes, which everyone always knew what we meant. As I understand, one of the rules you're challenging is smoking during pregnancy stunts fetal growth. Correct. So baby to fetus is a permissible leap or permissible adjustment, but harm to stunt growth is too far? Harm to stunt growth is definitely too far for the reason I gave. Again, the baby to fetus example, perhaps that wasn't the best example, but the principle that I was trying to convey in that example was if we could change a term in a way that doesn't change the substance, but it's just a more modern term. So again, maybe smoking to smoking cigarettes is a better example of that. One thing I would point out though is if I'm right that the word adjust means a modest authorization, slight changes, something like that. I win just based on the fact that FDA deleted three entirely and created four from scratch. That enough is enough to set aside the rule on that basis. We do think that we win on all of these others, but that enough. I get what you're saying, and there is some sort of superficial formalist plausibility to that, but I think Judge Southwick asks a good question, which is, is it really the numerosity that matters? The FDA could have theoretically done it this way, done what they did, but by only having nine. Is it really just sort of a drafting quirk? Would you agree that they could have achieved their goals by crafting the language a little bit more tightly? No, I don't agree that they would achieve their goals. I don't think they have achieved their goals on this record. Well, the fetal growth thing is one example. Maybe it doesn't work with others, but harm your baby, stunt fetal growth. I don't know. That strikes me as—well, keep going. I'll let you keep going. Okay. Just to circle back ever so briefly on the point I was making just a moment ago, the reason why I think we win if we're right on a just, just based on the fact that the agency has tossed out three and created four from scratch, is that FDA found that this set of 11 warnings would increase public understanding. It never did an evidence-based finding in a study to say, well, these four that might survive the test or these five that might survive the test, they would improve public understanding relative to the baseline of the warnings that Congress wrote, which everyone agrees is the relevant baseline here. So you're saying because Congress has enumerated nine, you've got to come up with nine that are either identical or a modest, as you say, adjustment to those nine. And by adding and subtracting from the nine, that's sort of an independent violation just as a formal matter. Yes, that's an independent violation as a formal matter because if Congress had authorized FDA to increase the number of warnings, we know exactly how it would have done so. It's done so elsewhere. So for example, in 21 U.S.C. 343 Q2A, which is part of the Food, Drug, and Cosmetic Act, Congress required disclosures of certain nutrients on food labels. But—and it listed the nutrients. But it wanted FDA to have the authority to require disclosures of additional nutrients. And so it said that expressly. Here, there's no such express authorization. If we look at D2, in fact, it's authorizing the adjustment of four enumerated things, format, type size, color graphics, and text. The number is notably not on that list. And it's telling that in the rule itself here, FDA said we don't have direct statutory authority to increase the number of warnings, but we think that it's reasonable. Our view is reasonable. This is back when Chevron still existed. And they proceeded on that basis. And that's at 85 Federal Register 15642. I think that's telling because, of course, Chevron no longer exists after Allopur Bright. And it just shows that the agency knew it was on rather thin ice from the beginning here when it was adding to the number of warnings, let alone adjusting the substantive text of those warnings as well. Let me ask you something else, Mr. Timmy. The standard that you urge is not the standard usually the four-factor likelihood of success being one of them. You only need to present a substantial case on the merits with a serious legal question as well. I cannot find any administrative agency regulation case where that standard has been applied. You don't cite any, but maybe there are some. Why would that apply here? There are a lot of serious legal issues that come before us. And we don't cut any slack to the appellant or whoever is seeking an injunction. We usually apply the factors that would apply to a stay or an injunction. Why is this a special case that gets less demanding standard? Judge Southwick, I see my time is up. May I briefly answer? Oh, I think I'd be all right. All right. Very well. So just as an initial matter, we think we win based on the fact that there's a substantial likelihood of success on the merits. We think we're likely to succeed. So we don't think the court needs to get into this question. But if it does, the Campaign for Southern Equality case, as you note, applies this standard. It's what Judge Barker cited below as well. And here, all of the non-merits factors, irreparable harm, public interest, and all of those things weigh strongly in our favor. And so even if it's a substantial case that doesn't quite rise to the likelihood, that is sufficient to grant the preliminary case. Does that apply in every case? Any case in which those factors are substantially one way, but there's it's hard to say there's a likelihood of success. It's just sort of an equipoise. There should always be a stay? Yes, if there's a substantial likelihood of succeeding on the merits, plus those factors. Well, if that is the substantial likelihood, you don't need this special case. Well, you've gone over enough. Thank you. Very well. Thank you. Mr. McAuley has another question. Thank you, Your Honor. I just have three quick points on rebuttal. First, I think the colloquy about amend and adjust illustrated our point, which is that it's the context that matters, not the word. The word amend can if the force of the hypothetical about the judge and the law to change the disposition of the opinion. And it doesn't matter what word was used. If you said change, feel free to change his opinion. No one would think that the law clerk would have unilateral authority. So that just takes you. That would obviously violate the non-delegation doctrine. Many doctrines, Your Honor. But let me ask, is there a middle ground here? Even if you believe or two judges believe that R.J. Reynolds is pushing too hard for basically chiseling in stone almost the text that Congress passed, we may also think that the FDA has gone too far and made too substantial of changes to be able to fit within the category of just. Is there some middle ground that would say maybe some of what the FDA did is pass, buster, under adjust? Are you basically saying that D1, D2 allow you to start from scratch almost and use none of the semblance of what was there in the statute and just go a new direction altogether so long as you support it, as the statute says, showing it is more effective? Your Honor, I— What anchor is there in this statute to the FDA doing whatever it wants to in changing the language? I guess I would—we're not asking you to go nearly so far as to say FDA can just sort of throw out the statute and start from scratch. What do we need to say for you to succeed? Yeah. I mean, if you look at these warnings, I mean, Congress set out a format, a type of warning, the sorts of information it wanted to convey. You know, it starts with the word warning, you know, in capital letters. It has a colon and then it has something, you know, a statement, you know, a single declaratory statement about one of the risks associated with tobacco use. And then Congress delegated to FDA authority to accompany those with colored graphics. And this isn't a circumstance where FDA went in a total new direction and said, maybe we should have a, you know, we've got half the pack to work with. Maybe we should have a, you know, long, you know, description. Maybe we should have, you know, crammed, like, four or five different health effects on the same warning. I mean, what FDA did was entirely grounded in the format and the understanding of what Congress was going for here. And the plaintiffs seemed to basically be saying, if there's a new health risk, or if one of the health risks that Congress identified is less of a concern now, too bad. You can't change it. But isn't there some force, though, to the other side's argument that you're not really adjusting? You're repealing, you're adding, you're subtracting. That's not working within the nine and tinkering at the margins. And isn't this more of a wholesale restructuring of the warning regime? I guess I would have two responses to that. The first is, and this goes to the example that opposing counsel gave of another circumstance where FDA was explicitly authorized to add, each cigarette package has one warning on it. So it's less of a, you know, it's less of an imposition to say, okay, instead of nine, there's 11. It's not like there's 11 warnings on the product. I understand how it works. But I think my point still holds, doesn't it? Adjusting these nine that, you know, I get that it's rotating. It's only one. But, you know, it's unlawful if you don't have one of these. And now, all of a sudden, it's lawful as long as you have one of the extra ones. That's a pretty, isn't that a more fundamental change than simply adjusting one of the nine? I guess I don't understand the distinction. If, I mean... Now, if I don't have one of your additional labels under the text of the statute, that's unlawful, right? Because it's not one of the nine. You're adding a new one. But I guess the point is that, I mean, Congress wrote a statute that says it's unlawful unless you have one of these warnings. Unless you think adjust literally means nothing at all, it's going to change... I can accept your argument that when we say unlawful to do one of these nine, but you can adjust, that means you can adjust one of these nine. That seems different categorically from adding entire new categories and subtracting from these. I mean, under your view, listing one of these would actually be unlawful. But that's true. Because it's not complying with your new rule. But as long as adjust means changing any word at all, that's going to be true because you're going to now... It's not going to be... Well, but if you can tie the new label to one of these nine, then that could theoretically work within your adjustment theory. The problem is FDA didn't do that. FDA went broader. I mean, I see my time is up, but I hope I can answer. And maybe with your forgiveness, make my last point. But the statute says you have to have one of these nine warnings. If you think adjust means anything at all, that FDA can change anything about it, it will no longer be true that you're safe if you have the text that Congress put into the statute. And instead, you're going to have to have FDA's text. And that is just... If you're with me, and I think even opposing counsel is with me, that you can have a word that's different from the FDA-required warning from the congressionally-required warning, then it's clear that when they say have one of these nine, what it means is have one of these warnings subject to whatever modifications FDA has permissibly made to them. And once you've crossed that, then I confess I don't understand the difference between, oh, we've changed one, or we've subtracted one, or we've added one. The point is, as this list is modified by FDA, you have to honor it. And the last point I would make goes to exactly... Well, wouldn't it help to at least be able to say one of the FDA's warnings has a provenance in one of these nine, as opposed to we don't care about the nine, it's just a default, we're adding completely new warnings altogether. Isn't that a categorical difference? I guess I don't know where that comes from in the statutory text, and it doesn't make... From the word adjust. Um, well, that's a good segue to my last point about the word adjust. I mean, there were several textual points that opposing counsel tried to make about this provision, and I just encourage the court to look at the whole provision. As has been pointed out, it's entitled change and requires statements. At the end, it says if the secretary finds that such a change would promote, it's pretty clear Congress is using change and adjust interchangeably there, and you don't have to go beyond the provision to say that. The use of format type size actually plainly helps us rather than them. According to plaintiff, you know, I don't understand if Congress was just talking about sort of formatting changes or changes of that kind, why it would have said specified those. Changes of that sort would plainly be included in plaintiff's understanding of what text means. What text means is change the text. And, you know, they pointed out the difference between establish and adjust. Establish, if nothing existed, it would be really strange to say FDA can establish textual warnings when Congress had already written some. So there's, if you look at the text and context, there's every reason to believe, as I began at the beginning of this argument, there's every reason to believe that Congress wanted FDA to exercise its scientific judgment and determine what warnings would best promote public understanding of this important health risk and Congress went on and on about the dangers of cigarette smoking and the importance of educating the public. And we would ask that the injunction be vacated. All right, sir. Thank you. Thank you, Your Honors.